**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JESUS DEJESUS,

           Petitioner,

v.

THE ATTORNEY GENERAL OF THE
STATE OF NEW JERSEY, et al.,

           Respondents.

Civil Action No. 24-8753 (KMW)

**OPINION**

**WILLIAMS**, District Judge:

This matter comes before the Court on Petitioner Jesus Dejesus's petition for a writ of habeas corpus. (ECF No. 1.) Following an order to answer, the State filed a response to the petition (ECF No. 5), to which Petitioner did not respond. (ECF Docket Sheet.) For the following reasons, Petitioner's habeas petition is denied, and Petitioner is denied a certificate of appealability.

**I.    BACKGROUND**

In the opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey Appellate Division summarized the factual background of this matter as follows:

> A jury convicted [Petitioner] of first-degree armed robbery[,] second-degree possession of a weapon for an unlawful purpose[,] and third-degree unlawful possession of a weapon[.] In a bifurcated trial that immediately followed, the same jury convicted [Petitioner] of a second-degree certain persons not to have weapons [violation]. After appropriate mergers, the judge imposed a twenty-year term of

>
> imprisonment, subject . . . on the robbery conviction and concurrent sentences on the remaining convictions.
>
> . . . .
>
> Briefly stated, the evidence at trial revealed that on the afternoon of June 19, 2012, the victim was sitting on a sidewalk bench in Paterson when a man approached, placed a gun to her forehead and demanded she give him her purse or he would kill her. The victim slapped the gun away, but the robber grabbed the purse, dragging the victim as he did so onto the sidewalk crowded with passersby. The victim fell to the ground, striking her head, and the assailant fled with her purse.
>
> Two people, J.W. and T.G., saw the incident and gave chase.[] They eventually caught and subdued the assailant until police arrived. When apprehended, the victim's purse was still in [Petitioner]'s hands. Both J.W. and T.G. identified [Petitioner] in court. A security guard found a pellet gun along the route [Petitioner] used to flee from the scene of the robbery. [Petitioner] did not testify or call any witnesses.
>
> Prior to testifying at trial, J.W. had been convicted of crimes on two occasions. The parties agreed that J.W.'s March 2004 for second- and third-degree crimes would be admissible for impeachment purposes pursuant to N.J.R.E. 609. However, the State sought to exclude a 1996 conviction, for which J.W. was resentenced on apparently two occasions, most recently in 2003. [Petitioner] argued that the 2004 conviction was an "intervening conviction," N.J.R.E. 609(b)(2)(i), and should be admitted.
>
> [The trial judge] concluded the 1996 conviction was "presumptively inadmissible[ under applicable state law, and ruled that it could not be used at trial for impeachment purposes.] On direct examination, the prosecutor asked J.W. about his 2004 convictions.

(ECF No. 5-19 at 1-5.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on

2

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.  DISCUSSION

3

### A. Petitioner's impeachment evidence claim[1]

Petitioner first contends that the trial court erred in prohibiting him from using J.W.'s 1996 conviction as a basis for impeachment on cross examination, which he contends resulted in an unfair trial. Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983), claims challenging the admissibility of evidence are normally considered questions of state law which are not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary ruling only where he can show that the admission of the evidence at issue denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect."

---

[1] In addition to the claims discussed in this opinion, Petitioner raises grounds in his habeas petition that essentially argue that his PCR claims were not subject to various procedural bars. (*See* Petitioner's grounds four and eight, ECF No. 1 at 14, 21.) As those assertions do not raise substantive grounds for relief and do not assert constitutional claims sufficient to support the granting of habeas relief, they are not cognizable as separate claims in this habeas matter. To the extent Petitioner's assertions regarding procedural bars are relevant to his actual substantive claims, this Court has considered them and found that they do not alter the outcome of any of Petitioner's substantive claims.

*Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

On direct appeal, the Appellate Division rejected this claim, finding that the 1996 was too remote to be used as impeachment evidence, and that even if there had been error, any error was incapable of resulting in an unfair trial in light of the evidence produced at trial and Petitioner's ability to cross-examine J.W. as to his 2004 conviction. That conclusion was neither contrary to nor an unreasonable application of federal law. The suppression of the 1996 conviction was not capable of producing an unjust result at trial as Petitioner retained the ability to impeach J.W. using his 2004 conviction for serious crimes, and it is not likely that a jury would have considered J.W. any less credible had it learned of a second, more remote conviction which occurred in 1996. In any event, the evidence did not hinge on the identification of J.W. alone, but also on the testimony of police, the victim, and the second good Samaritan, T.G., who identified Petitioner as the assailant in court. Indeed, the evidence indicated that Petitioner was apprehended still in possession of the victim's stolen purse. In light of this evidence, the suppression of only one of J.W.'s convictions for impeachment purposes was not capable of rendering Petitioner's trial fundamentally unfair, and Petitioner's claim is therefore no basis for habeas relief.

### B. Petitioner's prosecutorial misconduct claim

Petitioner next contends he was denied a fair trial by certain inappropriate remarks made by the prosecutor at the close of his summation in which the prosecutor briefly suggested it was the jury's duty to "get involved, [and convict Petitioner] on all charges." The Appellate Division

rejected this claim on direct appeal, finding that while the prosecutor's claims were clearly improper, they were brief in nature and any prejudice resulting from the brief improper statement was overcome by the strength of the State's case at trial. The Appellate Division thus found that the statement was not capable of depriving Petitioner of a fair trial. That conclusion was neither contrary to nor an unreasonable application of federal law.

The duty of a prosecutor in a criminal proceeding is to see that justice is done rather than to secure convictions, and prosecutors must therefore "refrain from [the use of] improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016). While a prosecutor "may strike hard blows [during his summation], he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88; *Bailey*, 840 F.3d at 124. A criminal conviction, however, "is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985). Prosecutorial misconduct will therefore only warrant habeas relief where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Copenhefer v. Horn*, 696 F.3d 377, 392 n. 5 (3d Cir. 2012).

Here, although the prosecutor's comments were inappropriate, they were not capable of so infecting Petitioner's trial with unfairness to deny him Due Process. The State's case against Petitioner was strong – he was caught in possession of the stolen purse, the pellet gun he used was recovered, and he was identified by multiple eyewitnesses at trial. The prosecutor's inappropriate comment, on the other hand, was brief and came at the end of an otherwise proper summation which recalled the relevant facts of the case. In light of the strong evidence of Petitioner's guilt

presented at trial and the fleeting nature of the improper comments, Petitioner was not denied a fundamentally fair trial, and the prosecutor's comments provide no basis for habeas relief.

### C. Petitioner's sentencing claim

Petitioner also argues that his sentence was "manifestly excessive" and "unduly punitive." As federal courts do not have authority during habeas review to re-examine issues of state law, *Estelle*, 502 U.S. at 67-69, and "sentencing is a matter of state criminal procedure and [generally] does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus," alleged sentencing error by a state court will not warrant habeas relief unless the sentence imposed was outside of the range authorized by the crime in question or was otherwise beyond the sentencing judge's authority. *See, e.g., Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987). The Appellate Division rejected this claim on direct appeal, finding that Petitioner's sentence was warranted under state law in light of the violence of the crime committed and Petitioner's prior criminal history, and that the sentence was therefore within the permissible range proscribed under state law. As Petitioner's sentence was within the range proscribed by state law and the sentencing judge clearly had the authority to issue that sentence, Petitioner's sentencing claim cannot serve as a basis for habeas relief. *Id.*

### D. Petitioner's ineffective assistance of counsel claims[2]

---

[2] Although Petitioner's habeas petition contains numerous grounds asserting ineffective assistance, his petition presents only one explicit ground – counsel's failure to seek out an audio-visual expert. Petitioner, however, also sought to incorporate the grounds raised in his PCR petition. This Court thus interprets Petitioner to be raising the ineffective assistance grounds raised during PCR proceedings in addition to the audio-visual expert claim. Those claims are as follows: counsel failed to adequately cross examine and compel witnesses in Petitioner's favor at trial, counsel

7

Petitioner next asserts that he suffered from ineffective assistance of counsel at trial and on direct appeal. The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors,

---

failed to object to the admission of the victim's handbag and the firearm recovered from the scene, counsel failed to call the police investigator at trial and question him about his incident report, and appellate counsel failed to raise Petitioner's PCR claims on direct appeal. Petitioner's PCR filings also contained a *Brady* claim related to the police report Petitioner obtained after trial which is discussed separately below.

8

> the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Petitioner first asserts that his trial counsel proved ineffective in conducting his pre-trial investigations. Specifically, Petitioner asserts counsel failed to consult with or hire an audio/visual expert to determine what, if any, further information might be gleaned from recordings taken during and before identification procedures and police interviews of witnesses, failed to acquire police reports which he believes would have aided the defense, failed to investigate aspects of those reports which may suggest one of the officers involved was not present during the investigation, failed to investigate and evaluate information as to the victim's injuries which was used against him at trial, and failed to investigate a third-party guilt defense. The Appellate Division rejected each of these claims on appeal from the denial of Petitioner's PCR petition, finding that Petitioner had failed to show what, if any, positive impact on the defense any of these investigations would have provided and thus failed to show further investigation would have revealed anything whose omission prejudiced Petitioner.

As one court in this distrct explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be

9

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

The Appellate Division's rejection of Petitioner's investigation related claims in this matter was neither contrary to nor an unreasonable application of *Strickland* and its progeny. As the Appellate Division noted, Petitioner relied solely on his own assertions, rather than any evidence,

10

to assert that further investigation would have produced any information of value. Petitioner has not provided any proposed expert who claims that further information could have been gleaned from the interview recordings, and Petitioner does not present any clear evidence beyond his own beliefs to indicate that further investigation of the police report, police records, or the victim's medical information would have in any way benefited his defense. Petitioner has certainly fallen far short of making the comprehensive showing required that he was prejudiced by counsel's alleged investigatory failings. Petitioner has likewise not identified any viable third-party guilt defense which could have been constructed. Ultimately, in light of the clear evidence of guilt presented at trial, and Petitioner's failure to provide any evidence to substantiate his assertion that further investigation would have borne fruit, Petitioner cannot show he was prejudiced and his failure to investigate claims therefore present no basis for habeas relief.

Petitioner also asserts that counsel proved ineffective in failing to challenge the admissibility of the victim's purse, which the victim identified, or the gun which was recovered from the path through which Petitioner fled following the robbery, and failed to challenge the witnesses' in court identifications. Petitioner apparently believes these to be improper fruits of the suppressed out of court identifications of Petitioner several witnesses made prior to trial. The Appellate Division rejected these claims, finding that the gun and purse, recovered entirely separately from the improper out of court identifications, were not the fruit of that violation, and that Petitioner failed to show that the admission of that evidence was in any way improper.

That determination was neither contrary to nor an unreasonable application of *Strickland*. As the Appellate Division noted, there was no clear connection between the suppressed out of court identifications and the recovery of the purse or gun. The purse was recovered during Petitioner's arrest and was identified by the victim, and the gun was located by searching the area through which Petitioner fled following the robbery, that improper identifications were made after

11

these events in no way impacts the validity or admissibility of this evidence, and any suppression motion counsel could have filed on such grounds would have been meritless. Likewise, as the Appellate Division noted, Petitioner failed to show that either the gun or purse was subject to attack on chain of custody grounds as both items remained in police custody following their recovery shortly after the robbery. Thus, counsel was not ineffective in failing to file motions to suppress on these grounds. *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Petitioner's identification argument fares no better – counsel successfully moved to suppress the out of court identifications, but that success has no effect upon the in court identifications made during trial by the eye witnesses. Petitioner has provided no basis to conclude that counsel had any meritorious basis to challenge those identifications, and that claim also fails to establish a basis for habeas relief as a result.

Petitioner also asserts that his trial counsel proved ineffective in failing to properly cross examine and confront the witnesses against him, and in failing to call other witnesses including the police investigator so that he might be cross-examined. The Appellate Division rejected these claims because Petitioner provided no more than a conclusory allegation that any benefit would have accrued from calling further witnesses, and failed to show that counsel's cross-examination of the witnesses at trial was insufficient.

That decision was neither contrary to nor an unreasonable application of *Strickland*. Petitioner provided no evidence that he was prejudiced by these alleged failures – counsel cross-examined each state witness at trial, and Petitioner has in no way shown that any beneficial testimony would have resulted from alternate questioning. Petitioner likewise failed to show that any further witnesses, including the police investigator would have provided any beneficial testimony at trial – it is far more likely that calling the investigator would instead have been a severe blunder insomuch as it may have opened the door to further testimony establishing

12

Petitioner's guilt. As Petitioner has utterly failed to show that he was prejudiced by counsel's choices during cross examination and choosing not to call the state investigator or any other, unspecified witness, and because the evidence of Petitioner's guilt at trial was strong, Petitioner has failed to show ineffective assistance and these claims provide no basis for habeas relief.

Petitioner also asserts that he suffered from ineffective assistance of appellate counsel because counsel did not press his PCR claims on direct appeal. While appellate counsel's decisions are subject to the same ineffective assistance standard applicable to trial counsel claims, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)), and appellate counsel need not raise every nonfrivolous claim a defendant wishes to pursue. *Jones v. Barnes*, 463 U.S. at 751. As the chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *id.* at 751-52; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). As the Appellate Division found, Petitioner has utterly failed to show that any of his PCR claims were of sufficient merit to warrant relief, and he has thus failed to show in any way that his PCR claims were clearly stronger than those raised on direct appeal. Because Petitioner has failed to show that he was prejudiced by appellate counsel's failure to raise the PCR claims on direct appeal, and the claims counsel did raise on appeal appear to be stronger than those raised during PCR proceedings, Petitioner has failed to establish ineffective assistance of appellate counsel, and Petitioner's appellate ineffective assistance claim is thus without merit, and the Appellate Division's denial of that claim was neither contrary to nor an unreasonable application of relevant federal law.

Petitioner further claims that, even if each of his assertions of ineffective assistance do not individually warrant habeas relief, they cumulatively serve as a basis for relief even in the absence of a showing of prejudice. The Appellate Division rejected this claim, finding that Petitioner's claims fared no better cumulatively than they do individually, and that Petitioner had completely failed to establish sufficient prejudice to warrant relief as to any or all of his ineffective assistance claims. Having reviewed Petitioner's claims, this Court agrees with that conclusion – Petitioner has not shown ineffective assistance in any of his individual claims, and considered together he still fails to establish any prejudice resulting from the alleged failures, and his cumulative error claim thus fails to establish any basis for habeas relief. *See, e.g., Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (cumulative error analysis merely aggregates claims together will only warrant relief where the claims together were not harmless and caused actual prejudice), *cert. denied*, 552 U.S. 1108 (2008).

### E. Petitioner's Brady Claim

In his final incorporated claim, Petitioner argues that he was improperly denied copies of police reports which he believes would have been beneficial to his defense because Petitioner appears to believe the reports suggested that certain officers were not on the scene during the investigation of the robbery. The Appellate Division rejected this claim during the PCR appeal, finding that Petitioner had failed to show that the police reports in question were in any way material as there was no reasonable likelihood that the documents could have produced exculpatory information.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that prosecutors violate a defendant's Due Process rights when they suppress material exculpatory evidence. Under *Brady*, prosecutors bear an "affirmative duty to disclose [material] evidence favorable to a defendant."

14

*Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady*, 373 U.S. 83.) "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In *Strickler v. Greene*, the Supreme Court clarified that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281–82 (1999).

The Appellate Division's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of *Brady* and its progeny. Petitioner has not shown that the police report was in any way exculpatory, nor has he shown that the outcome of trial would have been any different had he possessed a copy of the report prior to trial. Indeed, the reports themselves merely reiterate the testimony that the good Samaritans and victims provided at trial – that Petitioner robbed the victim of her purse using a black handgun and physical violence, that the two witnesses saw this occur and chased Petitioner thereafter and restrained him until police arrived, and that the purse was recovered from Petitioner's possession and the gun found on Petitioner's escape path. The report was thus hardly exculpatory, and Petitioner has not shown that he would have produced any beneficial testimony from the report even assuming he is correct that there is some discrepancy about which officers were on scene at the time of the investigation. Ultimately, in light of the testimony of the victim and the two good Samaritans that restrained Petitioner, there is no likelihood that any further testimony which could have been gleaned from the report and surrounding documents would have had any affect upon the outcome at trial, and the failure to turn over the report thus does not support a *Brady* claim. Thus, Petitioner's claim is without merit and serves as no basis for habeas relief. Because all of Petitioner's explicit and incorporated claims are without merit as discussed above, Petitioner's habeas petition is denied.

## IV.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.     CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, Petitioner is **DENIED** a certificate of appealability. An order consistent with this opinion shall be entered.

Hon. Karen M. Williams,
United States District Judge